PASSAIC VALLEY SEWERAGE COMMISSIONERS, A BODY CORPORATE, APPELLANT, v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL., RESPONDENTS.

Submitted July 7, 1919—Decided November 17, 1919.

1. Property acquired by the Passaic valley sewerage commissioners for the purpose of building an intercepting sewer in accordance with the provisions of *Pamph. L.* 1902, *p.* 195, and *Pamph. L.* 1907, *p.* 22, is held for the benefit of the municipalities who had joined in the contract for such sewer, and is the property of the municipalities; and, hence, exempt from taxation under the Tax act of 1903.

2. Land used by the Passaic valley sewerage commissioners for the construction of an intercepting sewer for the purpose of relieving the Passaic river from pollution, does not fairly come within the designation of "lands used for the purpose and for the protection of the public water supply," as used in *Pamph. L.* 1910, *p.* 199.

3. In order to include property of a body politic for the purpose of taxation the intent of the legislature to do so must be clearly expressed.

---

On appeal from the Supreme Court, whose opinion is reported in 92 *N. J. L.* 264.

For the appellant, *Riker & Riker*.

For the respondents, *John Bentley* and *Edward P. Stout*.

The opinion of the court was delivered by

KALISCH, J. The Passaic valley sewerage commissioners is a body politic and corporate organized under the act of 1902 (*Pamph. L.*, p. 195) to perform certain public functions and duties. Its powers and duties were further defined by legislative enactment in 1907. *Pamph. L.*, p. 22.

By section 11 of the later statute, pages 33 and 34, it is declared "that the said Passaic valley sewerage commissioners heretofore appointed, and their successors in office, are and shall continue to be a body politic and corporate, with perpetual succession under the name of Passaic Valley Sewerage Commissioners, with power to sue and be sued; with power to adopt and use a corporate seal, and with right, power and authority to acquire, hold, use and dispose of all such property, real or personal, as may be proper or necessary, and with all other power or authority proper or necessary to carry out and effectuate the purposes for which the said board is created."

By section 5 of the act, page 29, it is provided, *inter alia*, that upon contracts made between the commissioners and municipalities for an intercepting sewer or sewers, plant and work authorized by the act, they "shall have full power in their corporate name to purchase and acquire all lands, rights and interest in lands, either within or outside the territory of the joint contracting municipalities, which may be necessary for the construction of such intercepting sewer or sewers, and its appurtenances, and for this purpose are authorized to condemn the same in the manner provided by the general laws of this state relating to the condemnation of lands for public use."

Nineteen cities contracted with the commissioners for the construction of the Passaic valley sewer.

For the purposes of such sewer the commissioners acquired two certain lots of land in Jersey City. These lots were assessed for taxes by the city for the years 1914 and 1915, which taxes having remained unpaid for more than two years, the lots were sold, the city becoming the purchaser.

The appellant, by writ of *certiorari,* sought in the Supreme Court to have the assessment for taxes and the sale had thereunder set aside upon the ground that the lands of the appellant were exempt from taxation and as a corollary were exempt from sale for taxes.

The Supreme Court dismissed the writ and the legal propriety of such dismissal is brought here by the appellant for review.

The learned judge in the opinion states in a succinct fashion the legal question involved thus: "The prosecutors claim exemption under the Tax act of 1903. Section 3 of that act exempts property of the United States, the State of New Jersey, 'and of the respective counties, school districts and taxing districts when used for public purposes.' The property taxed is property necessary for the public work of an intercepting sewer to prevent the pollution of the Passaic river for the benefit of the municipalities in the Passaic valley. There is no question that it is used for public purposes. It is not property of a county or school district. The only question is whether it is property of a taxing district or districts." The learned judge answers this query by holding that the lots held by the commissioners for the public purpose for which they were acquired were not exempt from taxation, because it could not be properly said that the board of sewerage commissioners is a taxing district within the meaning of the Tax act of 1903.

We think this is a too narrow view of the meaning of the act. Sight is lost of the fact that the appellant is a body politic. Its officers are appointed by the governor, receive a fixed salary paid out of the public treasury, and half of the costs and expenses incurred by the board in investigating and performing the duties imposed upon it by the act is paid out of the state treasury, and as to the other half the costs and expenses the board is authorized to issue certificates, levy taxes, &c. It is, therefore, manifest that the board of commissioners is an arm of the state, to be wielded for the achievement of certain public purposes in which the state has an interest.

To carry out this public purpose the board of commissioners is authorized to acquire property as an agent of the state for the benefit of the state's minor political divisions—in this case the municipalities. It goes without saying that these municipalities are taxing districts.

The property acquired by the sewage commissioners is acquired by it, as the state's agent, for the benefit of those municipalities engaged with it in the joint enterprise to achieve a public work undertaken by the state through its agent for the benefit of such contracting parties. And to more effectually carry out the design of the act the state has clothed the commissioners with the government, direction and control of the joint enterprise. All this is made manifest by the last clause of section 4 of the act of 1907, page 29, which expressly provides that the municipalities and the Passaic valley sewerage commissioners in all contracts made between them, pursuant to the act, shall undertake and agree upon request of the commissioners to exercise and put in operation all their powers of eminent domain for the condemnation of lands, rights in lands and other property for the benefit of such joint enterprise. The section immediately following confers power on the commissioners to purchase and acquire lands, by condemnation, if necessary, for this purpose. For what purpose? This question is answered by section 4, "for the benefit of such joint enterprise." And this can mean nothing else than for the benefit of the municipalities who have joined in the contract with the commissioners.

It is said that this case can be distinguished from *Essex County Park Commission* v. *West Orange,* 75 *N. J. L.* 376; 77 *Id.* 575, where it was held, that because the act creating the commission expressly provided that land to be acquired by the commission in the corporate name of the board shall be "for the benefit of the county," and "titles to land required by condemnation are to pass to the board in trust for the county;" that, therefore, such property was property of the county and came within the exemption of the Tax act of 1903.

While it is true that no such express language is contained in the act under consideration, in the present case, we do not consider the use of express language necessary, so long as the same purpose expressed by such language appears inferentially from the language and design of the act. We think that this sufficiently appears here. It is evident that the only permissible inference that can be drawn from the language and general design of the statute we are considering is, that the property acquired by the commissioners is held for the benefit of the municipalities who had joined in the contract for the sewer. Such property is not the property of the commissioners but the property of the municipalities, and, hence, come clearly within the exemption of the Tax act of 1903.

For the respondent it is further insisted that even though the appellant's lots of land were exempt from taxation, that under the act of 1910 (*Pamph. L., p.* 199), a supplement to the Tax act of 1903, they are taxable.

This act refers to lands used for the purpose and for the protection of water-supply, and provides that the lands of the respective counties, townships, cities, &c., used for the purpose and for the protection of the public water-supply, shall be subject to taxation, &c.

We do not think that lands used for the construction of an intercepting sewer for the purpose of relieving the Passaic river from pollution, fairly comes within the designation "of lands used for the purpose and for the protection of public water-supply."

There is nothing in the record before us that discloses that the lots taxed are used for the purpose and protection of public water-supply. On the contrary, it appears that the lots were acquired for the purpose of the construction of an intercepting sewer to relieve the Passaic river from pollution. In order to include this class of property of a body politic for taxation, the intent of the legislature to do so must be clearly expressed. *Trustees of Public Schools* v. *City of Trenton,* 30 *N. J. Eq.* 667, 681.

The judgment below must be reversed, and the assessment for taxes and the sale had thereunder are set aside, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 14.